of law Neuens' *prima facie* § 1983 claim must fail. *See, e.g., O'Brien*, 23 F.3d at 995.

Finally, we conclude that the district court erred in denying Bridges' motion for summary judgment on the issue of qualified immunity. If after its independent review the district court concludes that Bridges did not act under color of state law, we instruct the district court to dismiss the complaint for failure to state a claim upon which relief may granted. Furthermore, where no action was taken under color of state law, the district court need not reach the issue of qualified immunity. *Carlson*, 813 F.2d 769, 770 (6th Cir. 1987).

### III. CONCLUSION

For the foregoing reasons, we REVERSE and VACATE the District Court's opinion and order and REMAND the case for proceedings consistent with this opinion.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0313P (6th Cir.)
File Name: 02a0313p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ANDREW NEUENS,
         *Plaintiff-Appellee,*

         *v.*                                         No. 01-4257

CITY OF COLUMBUS,
                  *Defendant,*

OFFICER ISAAC BRIDGES,
         *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-01384—Algenon L. Marbley, District Judge.

Argued: August 6, 2002

Decided and Filed: September 12, 2002

Before: KEITH and DAUGHTREY, Circuit Judges;
CARR, District Judge.[*]

_____

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

————————————

## COUNSEL

**ARGUED:**    Robert L. Washburn, Jr., CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, for Appellant.  James D. McNamara, Columbus, Ohio, for Appellee. **ON BRIEF:** Robert L. Washburn, Jr., Rory P. Callahan, CLOPPERT, LATANICK, SAUTER & WASHBURN, Columbus, Ohio, for Appellant.  James D. McNamara, Columbus, Ohio, Gregory B. Mathews, FUSCO, MACKEY, MATHEWS, SMITH & WATKINS, Westerville, Ohio, for Appellee.

————————————

## OPINION

————————————

DAMON J. KEITH, Circuit Judge.  On this interlocutory appeal, Defendant-Appellant, Police Officer Isaac Bridges ("Bridges") appeals the district court's denial of his summary judgment motion on grounds of qualified immunity in this action for damages under 42 U.S.C. § 1983.  For the reasons set forth below, we REVERSE and VACATE the district court's opinion and order and REMAND the case for proceedings consistent with this opinion.

### I. BACKGROUND

On the evening of December 25, 1998, the Plaintiff-Appellee, Andrew Neuens ("Neuens") went out with two friends, Nate Faught and Chad Spinosi.  The men first went to a local bar, then to a dance club.  Subsequently, the three decided to go to a Waffle House restaurant to eat.  They arrived at the Waffle House at approximately 2:00 a.m. on the morning of December 26, 1998.

When Neuens and his friends entered the Waffle House, they sat in the first booth nearest to the door, behind the jukebox.  Neuens sat alone on the side of the booth that

under color of law." *Id.*  The record clearly demonstrates that Bridges was acting in his private capacity on the morning of December 26, 1998.  Bridges was not in uniform, he was not driving in a police car, and he did not display a badge to Neuens or anyone else at the Waffle House restaurant.  Bridges was not at the Waffle House pursuant to official duties; rather, he was out with his personal friends for social reasons.  Neither Bridges nor his friends made any suggestions that Bridges was a police officer.  In fact, Neuens concedes in his appellate brief that he "had no idea that one of them, Appellant Bridges, was a Columbus police officer." (Appellee's Br. at 5).  Given these undisputed facts, one may reasonably conclude that Bridges was not acting under color of law during the incident that gives rise to this present case. *See, e.g.*, *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (an inebriated off-duty police officer who was not wearing a uniform, using his own gun, and never identified himself as an officer, was not acting under color of state law when he shot plaintiff); *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997) (off-duty officer who assaulted a minor was held not to be acting under color of state law because the officer was not wearing a badge, carrying a gun, driving his own vehicle, or found to be acting pursuant to his official duties); *compare Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (an off-duty officer was acting under color of state law when she shot a shoplifting suspect at a shopping mall while wearing a police uniform, and simultaneously ordered the suspect to stop and sought to arrest him).  However, the district court never engaged in an independent review of this issue.

The parties themselves may not stipulate to legal conclusions.  Nevertheless, because an independent review may demonstrate that Bridges was acting under color of law, we must reverse and  vacate the district court's opinion and order, and remand the case for further review of Bridges' conduct with respect to whether other facts suggest that he acted under color of state law on the evening in question.  Moreover, if Bridges is shown not to have acted under color

court did not analyze whether Bridges was acting under color of law because "[a]t oral argument on the motion for summary judgment, Defendant Bridges conceded that he was acting under color of law at the time of this incident." (J.A. at 125). Therefore, the district court addressed only the issue of whether Bridges deprived Neuens of his constitutional rights. (J.A. at 125). For the reasons stated below, we find that the district court erred when it accepted Bridges' stipulation that he was acting under color of law and considered only the second prong of § 1983 analysis. Because there is no indication in the record that Defendant-Appellant was acting under color of law at the time of the incident, we also conclude that the district court erred in denying Officer Bridges' summary judgment motion.

Whether Bridges was acting under color of law is a legal issue. *Moore v. City of Paducah*, 890 F.2d 831, 833 (6th Cir. 1989). "'Parties may not stipulate to the legal conclusions to be reached by the court.'" *TI Federal Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995) (*quoting Saviano v. Commissioner of Internal Revenue*, 765 F.2d 643, 645 (7th Cir. 1985)). "Issues of law are the province of courts, not of parties to a lawsuit, individuals whose legal conclusions may be tainted by self-interest. Courts, accordingly, 'are not bound to accept as controlling, stipulations as to questions of law.'" *DelBonis*, 72 F.3d at 928 (*quoting Estate of Sanford v. Commissioner*, 308 U.S. 39, 51 (1939)). In light of this case law, we find that the district court erred when it blindly accepted Bridges' stipulation without engaging in an independent review of whether he was acting under color of state law.

From the record, it is not clear that Bridges was acting under color of law at the time Neuens suffered his injury. "Acts of police officers in the ambit of their personal, private pursuits fall outside 42 U.S.C. § 1983." *Stengel v. Belcher*, 522 F.2d 438, 440 (6th Cir. 1975). "The fact that a police officer is on or off duty, or in or out of uniform is not controlling." *Id.* However, "[i]t is the nature of the act performed which determines whether the officer has acted

---

allowed him to face the door and cash registers. Mr. Faught and Mr. Spinosi sat across from him, facing the other booths. Upon entering the restaurant, the men noticed a security guard, Officer John Padgett, by the door.

Soon after Neuens and his friends began to eat, a group of people consisting of Bridges, Ernest Parker, and Josh Kincaid, along with another man and two women (collectively, the "Defendant group"), entered the Waffle House. Prior to entering the Waffle House, the Defendant group had been at a bowling alley. While there, some members of the group, including Mr. Parker, engaged in a fight, which Bridges took no action to prevent, stop, or report. According to Neuens, the Defendant group began creating problems as soon as they entered the Waffle House by "acting loud, drunk, and obnoxious." (J.A. at 120). Officer Bridges acknowledged that at least two members of his group were visibly inebriated, and that he himself had probably consumed alcohol that night as well. When they came in, the Defendant group seated themselves at the third booth behind the jukebox.

According to Neuens, the Defendant group began to harass Neuens and his friends as they sat down at their booth. Kincaid yelled expletives at Neuens and his friends. Although neither Neuens nor his friends had ever met anyone in the Defendant group prior to that evening, apparently some members of the Defendant group mistook Neuens and his friends for the people with whom they had fought at a local bowling alley earlier that evening.

As Neuens and his friends finished their meals, the tension between the two groups increased. Margaret Tracy, the waitress for both tables, believed that the tension was escalating to the point that it would ultimately lead to violence. Consequently, Ms. Tracy informed the security guard, Officer Padgett, that she was concerned that a fight would soon erupt. When Neuens' group finished eating their meal, Officer Padgett approached their table and advised them to leave the restaurant. Spinosi thereafter got out of the booth and turned to walk out of the restaurant. According to

Neuens, as soon as Spinosi got up, the Defendant group also got up, passed Neuens' table, and moved toward the exit. Before Spinosi reached the outer door, but after he had gone through the inner door, Parker pushed him from behind. As Spinosi turned around, he was punched twice in the face, first by Parker, then by Kincaid.

Neuens stood up from his table after the Defendant group had already passed by. As he approached the cash register, he heard a commotion behind him, and turned to see what was happening. The next thing he remembers is waking up hours later in the hospital. Neuens subsequently learned that Parker, after punching Spinosi, walked toward the register and punched Neuens from behind, knocking him to the floor, unconscious. Parker then kicked Neuens in the head. Bridges admits seeing Parker standing near Neuens, but denies seeing Parker kick or punch him. Nonetheless, at that point, Bridges grabbed Parker and pulled him out of the restaurant. The Defendant group then departed the Waffle House in two separate vehicles.

As a result of this incident, Neuens suffered injuries to his eye, severe lacerations to his eyebrows and lips, and a concussion, along with other minor injuries. Neuens thereafter filed a complaint against numerous individuals, including Defendant-Appellant Bridges, the City of Columbus, Parker, Kincaid, and Officer Padgett. As to his claim against Bridges, Neuens complained that Bridges had violated 42 U.S.C. § 1983 by depriving Neuens of his substantive due process rights. Bridges moved for summary judgment on the § 1983 claim, arguing that he had not deprived Neuens of his civil rights and, in the alternative, that he was entitled to qualified immunity from Neuens' § 1983 claim. At oral argument on the summary judgment motion, Bridges stipulated that he was acting under color of state law at the time of the incident. The District Court accepted Bridges' "stipulation" but denied his summary judgment motion, concluding that: (1) Neuens had presented sufficient evidence to raise genuine issues of material fact as to whether Bridges infringed Neuens' right to substantive due process

under a state-created danger theory of liability; and (2) Bridges was not entitled to qualified immunity.

Bridges thereafter filed a timely interlocutory appeal with respect to the District Court's denial of his summary judgment motion.

## II. ANALYSIS

Bridges' interlocutory appeal is properly before us because his claim for qualified immunity was denied by the district court. "A district court's denial of a motion for summary judgment is generally not appealable because the applicable statute, 28 U.S.C. § 1291, only vests appellate courts with jurisdiction over a district court's 'final decision.'" *Klein v. Long*, 275 F.3d 544, 549 (6th Cir. 2002). "The Supreme Court has held, however, that under the collateral order doctrine, 'a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.'" *Id.* (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

Because the District Court denied Bridges' summary judgment motion on qualified immunity grounds, our court has jurisdiction over his appeal with respect to the issue of qualified immunity. However, we are not required to confine our review to the viability of the qualified immunity defense. *Carlson v. Conklin*, 813 F.2d 769, 770-71 (6th Cir. 1987). Having jurisdiction over the qualified immunity issue also entitles us to review whether Neuens put forth a *prima facie* § 1983 claim. *See id.* at 771. With this jurisdictional framework established, we now turn to the merits of the case.

The district court erred in accepting the stipulation that Bridges was acting under color of state law at the time of Neuens' assault. In order to establish a *prima facie* § 1983 claim, a plaintiff must show that (1) a person acting under color of law (2) deprived him of his rights secured by the United States Constitution or its laws. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994). The district